IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES ex rel. ROBERT F. BLACK and STACIE HARRISON,<br><br>                  Plaintiffs,<br><br>    v.<br><br>AMERICAN SOCIETY FOR ENGINEERING EDUCATION, et al.,<br><br>                  Defendants. | CIVIL ACTION<br>NO. 12-1139 |

**OPINION**

**Slomsky, J.**                                                                                                        May 2, 2014

I.   INTRODUCTION

Plaintiff Robert F. Black ("Plaintiff" or "Black") brings this case as a relator on his own behalf and on behalf of Stacie Harrison ("Harrison") against the American Society for Engineering ("ASEE") and Dr. Norman Fortenberry ("Fortenberry") for retaliation in violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

From 1998 to 2013, Black was an employee of ASEE. In 2003, Harrison began working for ASEE as an independent contractor, and in 2011, she was hired as an employee. Black and Harrison were engaged in a personal relationship. Since May 2, 2011, Fortenberry has served as the Executive Director of ASEE.

In 2010, Black told various members of the Board of ASEE that he believed ASEE was violating the False Claims Act. He claims that ASEE and Fortenberry subsequently retaliated against both him and Harrison for making these allegations. This retaliation culminated in his termination from ASEE and Harrison's resignation after her compensation was severely reduced.

1

On March 8, 2012, Black filed the Complaint in this case.[1]  (Doc. No. 1.)  On June 14, 2013, the United States declined to intervene on behalf of relator Black.  (Doc. No. 2.)  Black thereafter filed an Amended Complaint.  (Doc. No. 11.)  Black and Harrison each bring a claim for retaliation under the False Claims Act against ASEE and Fortenberry (Counts I and II).  On October 17, 2013, Fortenberry filed a Motion to Dismiss both claims against him.  This Motion is now ripe for disposition.[2]  For reasons that follow, the Court will dismiss both claims against Fortenberry, and he will be dismissed as a Defendant.

## II.     BACKGROUND[3]

ASEE is a non-profit entity incorporated in Pennsylvania that represents the interests of engineering schools and faculty throughout the United States.  (Id. at ¶¶ 6, 12.)  ASEE serves as administrator of education-related programs sponsored by organizations such as the National Science Foundation and the Naval Research Laboratory, for which it receives funds in the form of grants.  (Id. at ¶¶ 13-14.)  ASEE charges the federal government a "pass-through" administrative fee for its administration of these grant programs.  (Id. at ¶ 13.)  In 2009, for example, ASEE was responsible for more than $55 million in grant funds, which generated more than $3 million in revenue for ASEE.  (Id.)  ASEE employs approximately seventy people, including both employees and independent contractors.  (Id.)

---

[1] In addition to ASEE and Fortenberry, Plaintiff also named Frank Huband and Lyle Feisel as Defendants.  On October 4, 2013, however, the parties agreed to dismiss Huband and Feisel from the case.  (Doc. No. 18.)  Thus, the only remaining Defendants are ASEE and Fortenberry.

[2] In reviewing the Motion to Dismiss, the Court considered the First Amended Complaint (Doc. No. 11), Defendant Norman Fortenberry's Motion to Dismiss and Brief in Support (Doc. Nos. 19, 20), Plaintiffs' Response (Doc. No. 23), and Defendant's Reply (Doc. No. 24).

[3] Because Defendants Huband and Feisel have been dismissed from this case, the Court will set forth only those facts that are relevant to remaining Defendants ASEE and Fortenberry.

From 1998 to 2013, Plaintiff was employed by ASEE. (Id. at ¶ 1.) From 1998 to 2001, he served as the Manager of Publication and Marketing. (Id.) In 2001, he was promoted to Deputy Executive Director and Manager of Publications and Marketing, a position he retained until 2011. (Id. at ¶ 2.) During this time, he also served as the Chief Operating Officer of ASEE and the Editor-in-Chief of Prism Magazine. Prism Magazine is the flagship publication of ASEE, with a world-wide circulation of approximately 13,500. (Id. at ¶ 3.)

In 2003, ASEE hired Plaintiff Harrison as an independent contractor to work on Prism Magazine. (Id. at ¶ 4.) Over the next several years, her work expanded to include supervising other employees, marketing, attending conferences, directing projects, and developing business. (Id.) In 2007, Black and Harrison began a personal relationship, which became known within ASEE. (Id. at ¶ 5.)

In 2010, Sae Park, interim Chief Financial Officer of ASEE, asked Black to help document what she believed to be serious financial issues within ASEE in order to bring them to the attention of the Board of Directors. (Id. at ¶ 25.) Black agreed to do so. He then emailed members of the Board to question the commingling of certain funds. (Id. at ¶¶ 26-27.) As a result, ASEE's auditors conducted an investigation, which concluded that certain funds had been improperly transferred and recorded. This resulted in an overpayment to ASEE of more than $130,000, which ASEE was then required to return to the government. (Id. at ¶¶ 28-29.)

In April 2010, the then Executive Director told Black that he would no longer be the Deputy Executive Director of ASEE.[4] (Id. at ¶ 34.) While Black would retain responsibility and authority within the publications department, he would no longer be responsible for activities outside of that department. (Id.) A memo was circulated to all ASEE employees to this effect.

---

[4] As noted, Fortenberry did not become Executive Director until May 2, 2011.

(Id. at ¶ 36.)  On April 21, 2010, however, after counsel for Black contacted the Executive Director, Black was offered his former job with an apology.  (Id. at ¶ 38.)

On January 7, 2011, Black met with the Executive Director and the Director of Human Resources who informed him that his relationship with Harrison was a "risk" to ASEE.  (Id. at ¶ 43.)  They told him that the only solution was for Harrison to leave ASEE.  (Id.)  They also asked Black if he had filed a lawsuit under the qui tam provisions of the False Claims Act.  (Id. at ¶ 44.)  By letter dated January 12, 2011, counsel for Black and Harrison contacted counsel for ASEE to raise concerns that employees of ASEE were retaliating against them for bringing purported violations of the False Claims Act to the attention of the Board of Directors.  (Id. at ¶ 45.)

On May 2, 2011, Fortenberry became the Executive Director of ASEE.  (Id. at ¶¶ 8-9.)  Fortenberry removed Black from his position as Deputy Executive Director and named him Advisor for Society Affairs.  (Id. at ¶ 48.)  As a result, Black lost oversight responsibilities for the operations of ASEE, as well as his title of Editor-in-Chief of Prism Magazine.  (Id. at ¶¶ 49-50.)  Black alleges that this was done to humiliate him and induce him to quit.  (Id. at ¶ 56.)  Fortenberry also moved Black's incoming mail slot from the second position to the ninth position, and gave him a detailed critique of his work without justification.  (Id. at ¶¶ 56-57.)

In September 2011, Fortenberry gave Black a performance evaluation, which acknowledged Black's demotion from Deputy Executive Director to Advisor for Society Affairs.  (Id. at ¶¶ 59-60.)  His salary was reduced from $187,000 to $100,000, with additional compensation based on a percentage of whatever revenue he could bring into ASEE.  (Id. at ¶ 61.)

Also in 2011, ASEE conducted an external audit to determine if its independent contractors had been misclassified. (Id. at ¶ 94.) ASEE then offered employment to the misclassified contractors, including Harrison. (Id. at ¶ 96.) All of the misclassified contractors were offered a compensation package commensurate with their prior salaries except for Harrison. (Id. at ¶ 97.) As an independent contractor, Harrison earned $129,960.28, but as an employee she was offered a salary of only $70,000. (Id. at ¶¶ 98-99.) Harrison alleges that this was done in retaliation for Black's allegations against ASEE. (Id. at ¶ 101.)

On May 10, 2011, Harrison told the Director of Human Resources that the $70,000 offer was unacceptable. (Id. at ¶ 102.) On June 7, 2011, she received a revised offer for $72,800. (Id. at ¶ 106.) Harrison alleges that she was forced to accept this offer at a substantially reduced salary. (Id. at ¶ 107). She subsequently quit her employment with ASEE. (Id. at ¶ 113.)

In March 2012, Black filed this action. (Id. at ¶ 63.) In September 2012, Fortenberry relocated him to a smaller office and changed his title from Adviser for Society Affairs to Director of Revenue Enhancement. (Id. at ¶¶ 64-65.) Black alleges that prior to relocating him and changing his title, Fortenberry became aware that the federal government had commenced an investigation into ASEE and believed Black to be responsible for instigating that investigation. (Id. at ¶ 66.)

In November 2012, Black submitted a "Strategy for the Department of Revenue Enhancement" to Fortenberry. (Id. at ¶ 72.) In response, Fortenberry sent Black a "scathing response" and made him redo the memo. (Id. at ¶ 73.) He did so, but Fortenberry continued to express dissatisfaction with his work. (Id. at ¶¶ 74-75.) On January 7, 2013, Fortenberry sent Black a memo detailing complaints from various staff members about Black's interactions with them. (Id. at ¶¶ 79, 84.) On February 5, 2013, Fortenberry terminated Black. (Id. at ¶ 88.) In

his termination memo, Fortenberry wrote that Black had "appeared to indicate" that he had instigated the governmental investigation into ASEE. (Id. at ¶ 87.)

**III. STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining whether a claim is plausible, a district court may also consider any affirmative defenses raised by the moving party. "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 12(b)). However, the so-called "Third Circuit Rule" allows affirmative defenses to be raised in a 12(b)(6) motion. Id. See also Ball v. Famiglio, 726 F.3d 448, 459 n.16 (3d Cir. 2013) cert. denied, 134 S. Ct. 1547 (U.S. 2014) ("[A] number of affirmative defenses that are not listed in Rule 12(b) [can] still be made by motion, provided that the basis of the defense [is] apparent on the face of the complaint."); Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) ("[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint."). For instance, a statute of limitations defense may be raised in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). See also Eddy v. Virgin

7

Islands Water & Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("qualified immunity may be raised in a motion to dismiss at the pleading stage . . . ."); Hartmann v. Time, Inc., 166 F.2d 127, 140 n.3 (3d Cir. 1947) (explaining that the defense of res judicata may be raised in the answer or in a motion to dismiss).

IV.   ANALYSIS

   A.  **Section 3730(h) of the FCA Does Not Impose Liability on Individual Supervisors**

Plaintiffs Black and Harrison each allege retaliation under the FCA against ASEE and Fortenberry (Counts I and II).  Fortenberry moves to dismiss both counts against him on the basis that § 3730(h) of the FCA does not impose liability on individual supervisors.

Section 3730(h) of the FCA creates "a private cause of action for an individual retaliated against by his employer for assisting an [FCA] investigation or proceeding."  Graham Cnty. Soil & Water Conservation Dis. v. U.S. ex rel. Wilson, 545 U.S. 409, 412 (2005).  Congress amended this provision in 2009.  Prior to the 2009 amendments, § 3730(h) stated:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment <u>by his or her employer</u> because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole . . . .

31 U.S.C. § 3730(h) (2003) (emphasis added).  This expressly limited § 3730(h) violations to "employers."  See Lipka v. Advantage Health Grp., Inc., 2013 WL 530401, *9 (D. Kan. Sept. 20, 2013).  In 2009, this provision was amended and now reads:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of unlawful acts done by the employee, contractor, or

> agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. 3730(h)(1).  Therefore, as part of the 2009 amendments, Congress deleted the word "employer" and expanded protection under the FCA from employees to employees, contractors, and agents.  This amendment applies to conduct occurring on or after May 20, 2009.  See Pub. L. No. 111-21, § 4(f), 123 Stat. 1617, 1624-25 (2009).

Since 2009, courts have split on whether § 3730(h) imposes liability for individual supervisors, in addition to employer entities, for retaliation claims under the FCA.  The majority of courts have held that this provision does not create liability for individual supervisors under the FCA, but rather creates liability only for the employer entity.  While the Third Circuit has not addressed this issue, courts in the Second Circuit have held that only employers, and not individual supervisors, may be liable under the FCA.  See Taylor v. New York State Office for People With Developmental Disabilities, No. 13-0740, 2014 WL 1202587, *10 (N.D.N.Y. Mar. 24, 2014) ("However, an individual may not be sued under § 3730(h) either in an individual or official capacity; liability may only be imposed on employers.") (citing Monsour v. New York State Office for People with Developmental Disabilities, No. 13-0336, 2014 WL 975604, *10 (N.D.N.Y. Mar. 12, 2014)); Fisch v. New Heights Academy Charter Sch., No. 12-2033, 2012 WL 4049959, at *4 (S.D.N.Y. Sep. 13, 2012) ("Section 3730(h) imposes liability only on employers."); Aryai v. Forfeiture Support Assocs., LLC, No. 10-8952, 2012 U.S. Dist. LEXIS 125227, at *12-13 (S.D.N.Y. Aug. 27, 2012) ("[S]ection 3730(h) does not apply to individuals"); U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ., 451 F.Supp.2d 613, 624-25 (S.D.N.Y. 2006) (holding that "only employers can incur liability under § 3730(h)").

In Aryai, the Southern District of New York described the purpose for the enactment of the FCA and explained why liability should not be imposed against individual supervisors.  2012

U.S. Dist. LEXIS 125227 at *21-22.  In doing so, the court noted that when considering amendments to legislation, an Act must be read as a whole, and a court cannot ignore the "common sense, precedent, and legislative history of the setting that gave it birth." Id.  (citing FTC v. Jantzen, Inc., 386 U.S. 228, 234-35 (1967)).  The court explained that the primary purpose of the 2009 amendment to the FCA's anti-retaliation provision was to "expand what formerly was a cause of action only for an 'employee' into a cause of action for an 'employee, contractor, or agent.'"  Id.  The House Report shows that Congress intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover any retaliation against those who planned to file an action (but did not), people related to or associated with relators, and contract workers and others who are not technically 'employees.'"  Id.  (citing H.R. Rep. No. 111-97, at 14 (2009)).

The House Report does not contain a similar statement of intent to expand the scope of liability to include individual employers or supervisors.  Id.  As the Aryai court noted:

> [W]here Congress expressly stated its intent to expand the definition of a whistleblower and added specific language to effectuate that intent, it strains common sense to read Congress's silence in the same sentence of the statute as effectuating an unexpressed intent to expand the class of defendants subject to liability under the statute.

Id.  Moreover, when discussing the case law that prompted the need for the 2009 amendments, the House Report cited only to cases that addressed the question of who qualifies as an "employee," rather than individual liability for employers.  Id.  Therefore, the 2009 amendments expanded the definition of "employee" rather than expanded the scope of "employer."  Congress was also aware that courts had uniformly rejected individual liability under the FCA and would have had to "overturn this line of authority by negative implication" for the amendment to impose individual liability on employers.  Id.

Likewise, in <u>Fisch,</u> the Southern District of New York explained that because the FCA does not define the term "employer," it is given its ordinary common law meaning. 2012 WL 4049959, at *4. Accordingly, it is the corporation only, and not its officers, that is considered the employer. <u>Id.</u> The court acknowledged the handful of cases in which district courts allowed § 3730(h) claims to go forward against individual defendants, but held that "in light of the clear language of the statute," the court would join "the overwhelming balance of authority holding otherwise." <u>Id.</u>

This Court agrees with the reasoning of these cases. <u>Fisch</u>, 2012 WL 4049959 at *4; Aryai, 2012 U.S. Dist. LEXIS 125227 at *12-13. As noted, when Congress amended the FCA in 2009, it expressly stated its intention to expand the definition of a whistleblower. The same cannot be said for the expansion of liability from employers to individual supervisors. Not only does the relevant House Report cite to cases pertaining to the definition of employee, but the ordinary meaning of the word "employer" supports a finding that a corporate entity, and not individual supervisors, should be liable under the FCA. Therefore, this Court declines to impose liability on individual supervisors under the FCA.

Plaintiff contends that this Court should follow the minority of courts that have held that the removal of the word "employer" suddenly creates a situation where employers may face liability in their individual capacity. However, the courts that have so held often do not provide detailed analysis for this interpretation of the 2009 amendments. See <u>Huang v. Rector & Visitors of Univ. of Va.</u>, 896 F. Supp. 2d 524, 528 n.16 (W.D. Va. 2012) (declining to dismiss individual liability claims in the absence of guidance from the Fourth Circuit where the 2009 amendment, by eliminating the reference to "employers" as defendants, effectively "left the universe of defendants undefined and wide-open"); <u>Laborde v. Rivera-Dueno</u>, 719 F.Supp. 2d 198, 205

(D.P.R. 2010) (in the absence of specific First Circuit guidance holding that individual liability does not exist in FCA retaliation claims, and in light of the amended version of the statute, the court denied Rule 12(b)(6) motion to dismiss individual defendants).

Plaintiffs also argue that § 3740(h) is analogous to 42 U.S.C. § 1981, which imposes individual liability on employers without specific language in the statute to that effect. This argument is unavailing. First, Congress enacted 42 U.S.C. § 1981 to prevent discrimination by private individuals. See Al-Khazraji v. Saint Francis Coll., 784 F.2d 505, 515 (3d Cir. 1986). In contrast, the purpose of § 3730(h) is to encourage individuals with knowledge of government fraud to bring that information forward. Thus, the objectives of the two statutes differ greatly. Accordingly, analogizing 42 U.S.C. § 1981 to the 2009 amended provision of the FCA is a futile exercise. The same is true for the various employment statutes cited by Plaintiffs.

As noted supra, the Court may consider any affirmative defense raised by the moving party in a Motion to Dismiss. Here, Fortenberry establishes that no plausible claim may be brought against him under the FCA because the FCA does not impose liability on individual supervisors. Because the FCA does not impose individual liability on Fortenberry, the claims against him will be dismissed. For this reason, the Court need not address the sufficiency of Plaintiff's pleading under the Iqbal and Twombly standards with respect to FCA claims against Fortenberry.

**V.    CONCLUSION**

For the foregoing reasons, Fortenberry's Motion to Dismiss will be granted and both counts against him will be dismissed. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES ex rel. ROBERT F. BLACK and STACIE HARRISON, | |
| Plaintiffs, | CIVIL ACTION NO. 12-1139 |
| v. | |
| AMERICAN SOCIETY FOR ENGINEERING EDUCATION, et al., | |
| Defendants. | |

## ORDER

**AND NOW**, this 2nd day of May 2014, upon consideration of Defendant Norman Fortenberry's Motion to Dismiss (Doc. Nos. 19, 20), Plaintiff's Response (Doc. No. 23), and Defendant's Reply (Doc. No. 24), it is **ORDERED** that Defendant Norman Fortenberry's Motion to Dismiss (Doc. Nos. 19, 20) is **GRANTED** and Defendant Norman Fortenberry is dismissed as a Defendant.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.